IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ARNAUD VERSLUYS;** and **INSTITUTE OF CLASSICS IN EAST ASIAN MEDICINE,** | No. 3:21-cv-01694-MO |
| Plaintiffs, | OPINION & ORDER |
| v. | |
| **SHARON WEIZENBAUM; NADINE ZAECH;** and **WHITE PINE CIRCLE, LLC,** | |
| Defendants. | |

**MOSMAN, J.,**

Defendants Sharon Weizenbaum, Nadine Zaech, and White Pine Circle, LLC (collectively "Defendants") move for attorney fees and costs under § 505 of the Copyright Act. Mot. for Att'y Fees [ECF 114]; Bill of Costs [ECF 118]. Plaintiffs Dr. Arnaud Versluys and Institute of Classics in East Asian Medicine ("ICEAM") (collectively "Plaintiffs") responded. Am. Mem. in Opp'n to Bill of Costs, Mot. for Att'y Fees ("Response") [ECF 119]. To which Defendants replied. Reply to Mot. for Att'y Fees ("Reply") [ECF 129]. Specifically, Defendants ask for $396,582.52 in fees and $14,901.55 in costs. For the reasons stated below, I GRANT in part Defendants' motion for fees and costs.

1 – OPINION AND ORDER

## FACTUAL BACKGROUND

Dr. Versluys teaches Chinese medicine, specifically pulse diagnosis. Compl. [ECF 1] at ¶ 10. Ms. Weizenbaum attended Dr. Verlsuys's seminars, and Ms. Zaech studied and worked with Dr. Versluys for many years. *Id.* at ¶¶ 14, 15; Defs.' Mot. for Summ. J. [ECF 94] at 8–11.

Plaintiffs alleged two claims in this matter: (1) that Defendants wrongfully taught Dr. Versluys's method of pulse diagnosis in breach of a proprietary rights agreement ("PRA") that Defendants signed; and (2) that Defendants taught pulse diagnosis seminars using materials that infringed on Dr. Versluys's copyrights. Compl. at ¶¶ 22, 29–30. Specifically, Plaintiffs alleged that the PowerPoint slides Defendants used to teach pulse diagnosis infringed on the copyrighted slides Dr. Versluys used to teach his pulse diagnosis seminars. *Id.* at ¶ 1; Defs.' Mot. for Summ. J. at 12.

I granted summary judgment on both claims, finding that Plaintiffs waived dispositive arguments as to both. O&O [ECF 110] at 1. I found that Plaintiffs did not respond to Defendants' argument that Plaintiffs' expert report did not satisfy the extrinsic test for purposes of proving their copyright claim. *Id.* at 5. Likewise, I found that Plaintiffs did not respond to Defendants' argument that the PRA was void for overbreadth. *Id.* at 6.

## DISCUSSION

### I. Fees for Copyright Claim

Section 505 of the Copyright Act states that "the court in its discretion may allow the recovery of full costs" and "may also award a reasonable attorney's fee to the prevailing party" in a copyright action. 17 U.S.C. § 505. When deciding whether to award fees, courts should consider "several nonexclusive factors," including frivolousness, motivation, objective unreasonableness, and the need to advance considerations of compensation and deterrence. *Shame On You Prods.,*

*Inc. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). Of these factors, courts should "give substantial weight to the reasonableness of the losing party's litigating position." *Id.* (citing *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 209 (2016)). But the reasonableness of the claim is not a controlling consideration, and courts must consider "all other relevant factors." *Kirtsaeng,* 579 U.S. at 209. When weighing the factors, courts must keep in mind whether awarding fees would advance the purposes of the Copyright Act. *Fogerty*, 510 U.S. at 534. "[C]opyright law ultimately serves the purpose of enriching the general public through access to creative works." *Fathers & Daughters Nevada, LLC v. Lingfu Zhang*, No. 3:16-cv-1443-SI, 2018 WL 3023089, at *1 (D. Or. June 18, 2018) (citing *Fogerty*, 510 U.S. at 527).

Defendants argue that they are entitled to fees and costs under § 505 because Plaintiffs' copyright claim was objectively unreasonable, Plaintiffs brought the claim to stifle competition, and an award of fees is necessary to deter Plaintiffs from pursuing overly aggressive copyright actions against competitors in the future. Defs.' Mot. for Att'y Fees at 5. I agree.

To begin, Plaintiffs' copyright claim was objectively unreasonable because it rested on shaky evidence, at best. Plaintiffs' slides are a compilation. This means that Plaintiffs had to show that Defendants' selection and arrangement of passages from ancient texts, translations of the passages, and diagrams depicting concepts explained in the texts were substantially similar to those of Plaintiffs. *See Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 350–51 (1991) ("A factual compilation is eligible for copyright if it features an original selection or arrangement of facts, but the copyright is limited to the particular selection or arrangement. In no event may copyright extend to the facts themselves."). Admittedly, there are similarities between Plaintiffs

3 – OPINION AND ORDER

and Defendants' slides. The slides cite some of the same passages, contain similar diagrams, and translate ancient Chinese texts in similar ways.

But Plaintiffs' expert only identified 15 of Defendants' slides that were allegedly substantially similar to Plaintiffs' slides. *See* Decl. of Scott Schaffer [ECF 122] at 2, Ex. 2 at 20–31. The slide decks in question totaled over 120 slides. *See* Decl. of Mae Stiles [ECF 93] at 2, Ex. 2. And Defendants argued at summary judgment that even the 15 slides Plaintiffs' expert identified were not substantially similar to those of Plaintiffs because they contained different passages, translated the passages differently, and used different diagrams. Defs.' Mot. for Summ. J. at 24–26. Plaintiffs did not respond to this argument and merely pointed to the fact that their expert found substantial similarities between the slides. O&O [ECF 110] at 5. Plaintiffs' failure to even attempt to marshal evidence to counter Defendants' argument weighs against the reasonableness of their claim.

Furthermore, Plaintiffs' claim sought to protect unprotectable ideas. Plaintiffs' copyright claim only applied to the arrangement of content on Defendants' slides and not to the ideas the slides expressed. Plaintiffs seem to have missed this distinction. Much of Plaintiffs' expert report is dedicated to discussing the uniqueness of Dr. Versluys's pulse diagnosis method.[1] *See, e.g.*, Decl. of Scott Schaffer at 2, Ex. 2 at 1–18. But no matter how unique his pulse diagnosis method was, this was not proper grounds for a copyright claim. *See Bikram's Yoga Coll. of India, L.P. v. Evolution Yoga, LLC*, 803 F.3d 1032, 1036–37 (9th Cir. 2015) (explaining that the copyright for a work describing how to perform a process does not extend to the process itself because "every idea, theory and fact in a copyrighted work becomes instantly available for public exploitation at

---

[1] It is worth noting that the uniqueness of Versluys's method was relevant to Plaintiffs' breach of contract claim.

4 – OPINION AND ORDER

the moment of publication"). The fact that Plaintiffs' claim sought, at least in part, to protect unprotectable ideas also weighs against the reasonableness of their claim.

The motivation factor also cuts in Defendants' favor. Defendants are Plaintiffs' competitors. The fact that Plaintiffs brought a weak copyright claim against their competitor suggests that Plaintiffs brought the suit for reasons other than protecting their copyrights, namely to stifle competition.[2]

Defendants have presented evidence that reinforces this inference. Defendants submitted several exhibits with their Reply. Exhibit 1 is an email Kumiko Shirai, a former student of Dr. Versluys, sent to Ms. Zaech in which she says she stopped teaching Chinese medicine for several years because Dr. Versluys threatened to sue her if she continued to teach it. Decl. of Mae Stiles [ECF 130] Ex. 1. Exhibit 2 is an email Dr. Versluys sent to Dirk Berein, who runs a Chinese medicine school in Germany. *Id.* Ex. 2. In the email, Dr. Versluys notifies Mr. Berein that Ms. Zaech is "unlawfully teaching materials that belong" to ICEAM and that Dr. Versluys will partner with Mr. Berein only if he prohibits Ms. Zaech from teaching at his school. *Id.* Exhibit 3 is an email Dr. Versluys sent to Tanja Hauser, a former student. Dr. Versluys tells Ms. Hauser that by partnering with Ms. Zaech she is breaching the PRA she signed, that Ms. Zaech is not authorized to teach ICEAM content, and that Ms. Hauser is banned from ICEAM courses in the future. *Id.* Ex. 3. The emails date as far back as 2017. The emails suggest that Dr. Versluys has tried to stifle

---

[2] Defendants do not raise this point, but it is worth mentioning that Dr. Versluys registered the copyrights for his slides only after Defendants advertised their course and enrollment in the course had begun. Defs.' Mot. for Summ. J. at 12. This was a mere two months before he initiated this lawsuit. *See* Decl. of Mae Stiles at 2, Ex. 9 (Certificates of Registration from the Copyright Office dated September 14 and 29, 2021); *see generally* Compl. (filed November 23, 2021). This is additional evidence that Plaintiffs' motives were not limited to enforcing legitimate copyrights.

5 – OPINION AND ORDER

competition from Ms. Zaech and other former students in the past. The emails also suggest that Dr. Versluys believes that he owns a set of ideas that he in fact cannot own. As such, these emails coupled with the weakness of Plaintiffs' claim suggest that Plaintiffs brought the claim, at least in part, to stifle competition and based on the misplaced belief that Dr. Versluys owns a set of ideas that he cannot own.

Additionally, the deterrence factor weighs in favor of Defendants. As the exhibits to Defendants' Reply show, Dr. Versluys has a history of trying to stifle competition by threatening legal action and maligning the reputation of competitors. Awarding fees would deter this conduct in the future.

Finally, awarding fees is consistent with the aims of the Copyright Act. The Copyright Act seeks to "enrich[] the general public through access to creative works." *Fathers*, 2018 WL 3023089, at *1. Plaintiffs' lawsuit and Dr. Versluys's conduct run contrary to the principle that ideas, theories, and facts in a copyrighted work are available for public use once published. *Bikram's Yoga*, 803 F.3d at 1037. Awarding fees would reinforce the aim of the Copyright Act to promote creative works that benefit the public, especially considering that the works at issue here are based on ancient texts and practices that are widely available to the public.

For these reasons, I find that Defendants are entitled to fees and costs under § 505 of the Copyright Act.

## II. Fees for Breach of Contract Claim and Counterclaims

In this matter, there were six claims: Plaintiffs' breach of contract and copyright infringement claims; and Defendants' negligent misrepresentation, fraudulent misrepresentation, tortious interference with economic relations, and attempted monopolization claims. Defendants argue that I should not allocate fees among the claims because all the claims were "based on the

same core set of facts and a related family of legal theories." Defs.' Mot. for Att'y Fees at 6. Plaintiffs disagree, arguing that the claims are factually distinct because they all turn on different ultimate facts. Pls.' Resp. at 15.

Courts are permitted to award fees on claims related to copyright claims. *Shame on You Productions*, 839 F.3d at 669 (citing *Traditional Cat Ass'n, Inc. v. Gilbreath*, 340 F.3d 829, 833 (9th Cir. 2003)). A claim is related to a copyright claim if it "involve[s] a common core of facts or [is] based on related legal theories." *Id.* (citing *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005)); *see also Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 937 (9th Cir. 2004) ("Allocation is not required where there is a 'common core of facts' that requires substantially the same expense on prevailing and unsuccessful claims."). For example, *In Shame on You Productions* the Ninth Circuit affirmed the district court's finding that the plaintiff's copyright and breach of implied contract claims shared a common core of facts because the contract claim was based on the allegation that the defendant had agreed to pay the plaintiff if he used his script. *Id.* at 669–70. Thus, both claims turned on whether the defendant copied the plaintiff's script. *Id.*

The case law interprets "common core of facts" broadly. For example, in *McCowan v. City of Fontana*, the Ninth Circuit concluded that the plaintiff's wrongful detention, false arrest, and use of excessive force claims involved a common core of facts for the purpose of determining fees because all the claims arose out of his arrest. 565 F.3d 1097, 1103 (9th Cir. 2009) (cited by *Oracle USA, Inc. v. Rimini St., Inc.*, 783 F. App'x 707, 711 (9th Cir. 2019), when discussing common core of facts in the context of awarding fees in a copyright action).

Here, I find that Plaintiffs' contract and copyright claims and Defendants' tortious interference with economic relations and attempted monopolization claims all share a common core of facts.

7 – OPINION AND ORDER

While the breach of contract claim relates to the teaching of ideas and the copyright claim relates to the expression of ideas, both claims relate to Defendants' wrongful use of Plaintiffs' proprietary ideas and materials in their course. In other words, although the ultimate facts needed to prove each claim are distinct, the claims are factually related. Both claims require a thorough review of the same materials to determine whether Defendants' stole Plaintiffs' ideas and materials. As Defendants argue, even Plaintiffs' expert report often conflates Plaintiffs' copyright and contract claims. Throughout the report, discussion of the similarities of the slides often merges with discussion about how Ms. Zaech used Dr. Versluys' unique methodology and ideas while teaching her course. *See, e.g.*, Decl. of Scott Schaffer at 2, Ex. 2 at 31–35.

Plaintiffs contend that even if I find that their copyright and contract claims share a common core of facts, I should at least allocate fees for Defendants' motion for partial summary judgment on Plaintiffs' breach of contract claim because all the fees relate exclusively to the contract claim. Resp. at 17. But Plaintiffs do not cite any authority to support this argument. The case law requires allocation of fees only for claims that are factually or legally distinct from copyright claims. Because I find that Plaintiffs' claims share a common core of facts, I decline Plaintiffs' request.

Similarly, Defendants' tortious interference with economic relations and attempted monopolization claims share a common core of facts with Plaintiffs' copyright claim. Defendants' claims are based on the allegation that Plaintiffs misused copyright law to interfere with Defendants' business and engage in anticompetitive practices. Answer [ECF 17] at ¶¶ 91, 95.

I find, however, that Defendants' negligent and fraudulent misrepresentation claims do not share a common core of facts with Plaintiffs' copyright claim. The misrepresentation claims center around the allegation that at the time of enrolling in and paying for Dr. Versluys's seminar, Dr.

8 – OPINION AND ORDER

Versluys concealed the fact that attendees would have to sign the PRA. Answer at 22–24. These claims do not relate to the use of Dr. Versluys's proprietary materials in Defendants' courses. Accordingly, the misrepresentation claims are factually and legally distinct from Plaintiffs' copyright claim.

Defendants' time sheets do not separate out the time spent on their misrepresentation claims. While the misrepresentation claims account for two of the six claims in this action, they did not require intensive discovery relative to the other claims. Also, they played a minimal role—if any role at all—in the Parties' motion practice. *See, e.g.*, Defs.' Mot. for Summ. J. (addressing only Plaintiffs' copyright and contract claims). Accordingly, I find that a 5% reduction of Defendants' fees is appropriate.

### III. Enhancement of Fees

Next, Defendants argue that I should multiply their award of fees by 1.5 because the result their counsel achieved was exceptional. Defs.' Mot. of Atty Fees at 9; Reply at 9.

I disagree. "The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Defendants have not shown that this is an exceptional case warranting an enhancement of fees. I therefore decline Defendants' request.

### IV. Fees and Costs

Reasonable fees are determined using the lodestar method, in which the court multiplies a reasonable hourly rate by the number of hours reasonably expended in the litigation. *See Hensley*

*v. Eckerhart*, 461 U.S. 424, 433 (1983); *Fischer v. SJB-P. D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000); *see also Van Gerwen*, 214 F.3d at 1045 (noting that "[t]he lodestar amount is presumptively the reasonable fee amount").

Plaintiffs do not contest Defendants' rates or time billed. I find that Defendants' time and rates billed are reasonable under the lodestar method. Defendants' rates billed are representative of their experience and area of practice and are consistent with the Oregon State Bar 2022 Economic Survey. Likewise, Defendants' hours billed are reasonable. This litigation lasted for two and a half years and Defendants managed to defeat Plaintiffs' claims at summary judgment.

After reducing Defendants' fees by 5% for their misrepresentation claims, I find that Defendants are entitled to $376,753.36 in fees. I also find that Defendants are entitled to $14,901.55 in costs.

## CONCLUSION

For the foregoing reasons, I GRANT in part Defendants' Motion for Attorney Fees. I deny Defendants' request not to allocate fees for their misrepresentation claims. I also deny Defendants' request to enhance their fees. But I grant the remainder of Defendants' motion and award Defendants $376,753.36 in fees and $14,901.55 in costs.

IT IS SO ORDERED.

DATED this __4th__ day of March, 2024.

*Michael W. Mosman*
MICHAEL W. MOSMAN
Senior United States District Judge